UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM E. CALLAHAN | : |
|     PLAINTIFF | : |
| VS. | : DOCKET NO: 3:01CV1205(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC. | : : |
|     DEFENDANTS | : |
| and | |
| EUGENE PANECCASIO | : |
|     PLAINTIFF | : |
| VS. | : DOCKET NO: 3:01CV2065(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC. | : : |
|     DEFENDANTS | : JUNE 29, 2004 |

**PLAINTIFF WILLIAM CALLAHAN'S MEMORANDUM IN
SUPPORT OF HIS OBJECTION TO DEFENDANT UNISOURCE'S
<u>MOTION TO COMPEL</u>**

The plaintiff William Callahan objects to the Unisource defendants' Motion to Compel certain documents withheld from production by plaintiff Callahan and described specifically as part of plaintiff Callahan's April 28, 2004 response to a subpoena duces tecum issued to the law firm of McEleney and McGrail. The following letters are enclosed for the court's <u>in camera</u> review and correspond to those documents described in plaintiff's April 28, 2004 response.

For the following reasons, these documents fall within the attorney-client privilege and work-product immunity, and William Callahan did not waive either privilege during the course of his deposition testimony. At the outset, Mr. Callahan really had no idea what kind of file existed at Stephen McEleney's office at the time and date his deposition was taken, August 25, 2003. His deposition testimony related to conversations with attorney McGrail who tragically died on December 11, 1999 nearly one year after the date of the Separation Agreement signed by Mr. Callahan and Unisource.

The deposition references contained in ex. A to the defendants' memorandum deal with conversations between Mr. Callahan and attorney McGrail during the negotiation period which ended in December 1998. William Callahan testified at Tr. 177, ex A., that attorney McEleney was not present for any discussions between Callahan and attorney McGrail pertaining to the unenforceability of the Severance Agreement. Mr. Callahan testified that he discussed with attorney McEleney attorney

McGrail's thought process for overturning the Severance Letter (Tr. 177), but gave no detail.

Mr. Callahan testified that the conversation about attorney McGrail's thought process occurred on Labor Day weekend of 1999. Mac McGrail died after a long illness in December 1999. He was Mr. Callahan's attorney, and Stephen McEleney was Mr. McGrail's partner. With respect to each document the following privilege is asserted:

1.  July 2, 1999 letter from Callahan to attorney McGrail. This letter is approximately six months after the Severance Agreement was signed and relate to conversation with an individual at CHRO about settling. Callahan is asking McGrail to give him a call.

2.  Two pages of McEleney notes of conversations with William Callahan setting forth Callahan's description of Mac's feelings of what would happen if Callahan appealed at CHRO. The second page are McEleney notes of a conversation with Callahan starting with the number three. These notes are undated but are in attorney McEleney's handwriting.

3.  3/28/00 cover letter from William Callahan to attorney Stephen McEleney enclosing the response to CHRO.

4.  An undated letter from William Callahan to attorney McEleney setting forth Mac's thoughts and other matters.

Plaintiff Callahan waived the attorney-client privilege he had with respect to conversations between himself and attorney McGrail.  Attorney McGrail represented Mr. Callahan throughout the course of negotiation of the Severance Agreement and rendered a legal opinion to William Callahan that Mr. Callahan could claim duress even while signing the Severance Agreement.  Mr. McEleney was not involved in those discussions, and there is absolutely no evidence that Mr. McGrail shared with McEleney any conversations McGrail had with Mr. Callahan through the signing of the Severance Agreement and throughout 1999.  An examination of attorney McEleney's notes showed no familiarity with Mr. Callahan's case and no familiarity with the negotiations and thought processes of either Mr. Callahan or attorney McGrail well into 1999.

Callahan never waived any privilege he had with McEleney, and there was absolutely no indication that McGrail ever shared any privileged information obtained during the course of McGrail's representation of Callahan with attorney McEleney prior to Mac McGrail's death in December 1999.

Nothing that William Callahan testified to during the course of his deposition and no other actions taken by him indicate any intention to or actual waiver of an attorney-client privilege between Callahan and Stephen McEleney or any waiver of any work-product immunity held by attorney McEleney.

4

The July 2, 1999 cover letter from Callahan to Mac deals with Mr. Callahan's CHRO action, specifically transmitting information about a settlement inquiry from a CHRO representative. This does not pertain to the settlement negotiations or attorney McGrail's advice during the course of those negotiations. With respect to the McEleney notes consisting of two pages of two different conversations with William Callahan, these notes clearly reflect conversations between attorney McEleney and William Callahan. McEleney was clearly acting in his capacity as an attorney, and there is every indication that the conversations were intended to be confidential.

There is no indication that McGrail ever shared with McEleney any of the information provided to him by William Callahan. Rather, these are notes of separate conversations between Callahan and McEleney referring to some history regarding the Severance Agreement between Callahan and Unisource and Mac's feelings if there were an appeal. Nothing in Callahan's deposition constitutes a waiver of the attorney-client privilege between Callahan and McEleney and nothing McEleney or Callahan has ever done constitutes a waiver of work product immunity.

The next document is a letter dated March 28, 2000 from Callahan to McEleney enclosing a response that the attorney and client had discussed yesterday. Finally, there is an undated letter from Callahan to attorney McEleney, the substance of which relates to a previous letter sent by Callahan to McEleney in which CHRO denied Callahan's request for reconsideration. This letter concerns strategy moving forward

5

and contains Callahan's statement as follows: "I realize that you were not involved with me originally because of my relationship with Mac…". This is clearly a communication between Callahan and attorney McEleney after Mac's death which was intended to be confidential and which confidentiality was never waived by Callahan by word or deed. Callahan never waived or voluntarily disclosed the contents of his communication with McEleney; nor has he disclosed any significant part of the matter or communication over which the privilege is claimed. See, Fullerton vs. Prudential Insurance, Co., 194 F.R.D. 100, 102 (SDNY 2000). This letter deals with strategy moving forward even though it makes reference to Mac's legal opinions.

Unisource's argument fails because there is no evidence that attorney McGrail ever shared any privileged communications with McEleney, and there is absolutely no evidence that Callahan's testimony about his discussions with McGrail constituted a waiver of subsequent conversations he had with McEleney after McGrail's death. The waiver of an attorney-client privilege is a question of fact. United States vs. International Brotherhood of Teamsters, 961 F.Supp. 665, 673 (SDNY 1997).

Further, there can be no claim that there has been a waiver of any work product privilege, since none of the work product of McEleney has been provided to Unisource unless they constituted letters to third parties.

In the absence of any showing by defendant Unisource that plaintiff Callahan exhibited by word or deed a disclosure of any significant part of his communications

6

with McEleney, there is no showing that Callahan ever intended to or waived as a matter of fact the attorney-client privilege between himself and attorney Stephen McEleney.

For these reasons, the Unisource defendants' motion to compel should be denied.

THE PLAINTIFF,
WILLIAM E. CALLAHAN


BY_____
   ANDREW B. BOWMAN, ct00122
   1804 Post Road East
   Westport, CT 06880
   (203) 259-0599
   (203) 255-2570 (Fax)

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was sent by regular mail, postage prepaid on this 29th day of June, 2004 to:

Felix J. Springer
Jennifer L. Sachs
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Joseph J. Costello
Kay Kyungsun Yu
Megan E. Shafer
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103-2921

Robert L. Wyld
Patrick M. Fahey
Shipman & Goodman
One American Row
Hartford, CT 06103

Rayne Rasty
Georgia-Pacific Corp.
133 Peachtree St., N.E.
Atlanta, GA 30303

_____
ANDREW B. BOWMAN