IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM E. CALLAHAN, | : | |
| | : | CIVIL ACTION NO. 3:01CV1205(CFD) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| and | : | |
| | : | |
| EUGENE PANECCASIO, | : | CIVIL ACTION NO.: 3:01CV2065(CFD) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., | : | |
| | : | |
| Defendants. | : | JULY 14, 2004 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**

In opposing Defendants' motion to compel the production of the entire contents of his former attorneys' file, and not just selected and self-serving documents, plaintiff William Callahan ("Callahan") basically seeks permission to have his cake and eat it, too. He argues that he should be allowed to waive the attorney-client privilege so as to be able to use several purported

statements of his late attorney, Albert ("Mac") McGrail, as a sword in furtherance of his claims concerning the Separation Agreement that he executed, while at the same time retaining the privilege to shield from disclosure communications between himself and McGrail's sole law partner, Stephen McEleney, who stepped into McGrail's shoes to handle Callahan's claims after McGrail's untimely death. This Court should reject Callahan's self-serving position, and should compel disclosure of the withheld documents from the legal file of McEleney & McGrail.

As set forth in Defendants' opening memorandum, case law in this Circuit is rightly inimical to this type of "sword and shield" attempt:

> It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both "sword" and "shield." . . . . The circuit court has held that the scope of any waiver by virtue of disclosure is to be defined by the so-called fairness doctrine, which aims to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information.

Granite Partners, L.P. v. Bear, Stearns & Co., 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (citations and internal punctuation omitted).

Here, Callahan has relied on a blatantly self-serving recollection of purported statements by McGrail, but at the same time has attempted to protect materials that may reveal inconsistencies or worse in his legal position. His only purported ground for withholding these documents is that they pertain to communications with McEleney, not McGrail. However, this argument begs the question of the role that McEleney played in this matter, namely stepping into McGrail's shoes upon the latter's untimely death. It is clear that, in McGrail's stead and as his law partner,[1] McEleney provided advice to Callahan on precisely the same issues and subject matter: Callahan's

---

[1] Indeed, there was only one legal file, to which both attorneys at different times contributed documents.

attempt to void the Separation Agreement he had executed and to pursue a discrimination claim against Defendants. Additionally, it is apparent that McEleney necessarily became privy to McGrail's purported advice and acted in furtherance of that advice, and that his input bears directly on Callahan's current claim of duress. As such, all of McEleney's communications must be disclosed so that Defendants can fairly assess whether the material affects the credibility of Callahan's arguments.

Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 210 F.R.D. 506 (S.D.N.Y. 2002) is instructive in this regard. In that case, the court noted that where a party claims reliance on the advice of a lawyer, "the legal advice it received from any other lawyers on that subject relates to the reasonableness of [its] reliance and is not subject to the attorney/client privilege." Id. at 510 (citing In re Gaming Lottery Sec. Lit., 2000 U.S. Dist. Lexis 17537 (S.D.N.Y. 2000).) As such, the court concluded that because the party's state of mind was relevant to the case, it had clearly "put the otherwise privileged documents" – including documents from other lawyers – at issue. Id.; see also Pereira v. United Jersey Bank, 1997 U.S. Dist. Lexis 19751, at *14-20 (S.D.N.Y. 1997). Production of the requested documents, rather than an intermediate step such as in camera inspection, is the necessary result. See Bank Brussels Lambert, 210 F.R.D. at 511.

Even if Callahan had some privilege to assert with respect to his communications with McEleney, which as set forth above he does not, he clearly waived it through his production of a significant portion of those communications, limited to documents that are either neutral or self-servicing. As demonstrated by the documents attached hereto as Appendix A, all of which Callahan produced without protest, he is apparently happy to waive purported privilege relating to his discussions with McEleney so long as doing so advances his interests. The law of privilege, however, does not work that way.

Callahan also seeks to invoke the work-product privilege to protect the selected documents. In circumstances where the attorney-client privilege has been waived, there is no legitimate basis for invoking the work-product privilege. See, e.g., U.S. v. Western Elec. Co., 132 F.R.D. 1, 3 (D.D.C.1990) (holding that "[t]he work product privilege is also waived when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege") (citation omitted). In that case, the court held that since the party claiming privilege had claimed good faith reliance on its counsel's advice and had disclosed his conclusions, it was "precluded from asserting privilege as to any documents which undermine the claim of good faith reliance while producing work product that support this claim." Id.; see also Bank Brussels Lambert, 210 F.R.D. at 511 (noting that the "at issue" waiver doctrine also applies to work product).

A similar outcome is dictated in the instant case. Callahan has chosen to place his attorneys' advice squarely at issue, and cannot now assert privilege in order to protect materials that could undermine this purported reliance or eviscerate his credibility.

For all of the foregoing reasons, Callahan should be compelled to produce to Defendants the documents that he has thus far withheld on an unsustainable claim of privilege.

Respectfully submitted,


DEFENDANTS, UNISOURCE
WORLDWIDE, INC. and GEORGIA-PACIFIC
CORPORATION



By:_____
      Felix J. Springer (CT05700)
      DAY, BERRY & HOWARD, LLP
      CityPlace I
      Hartford, CT  06103-3499
      (860) 275-0100
      (860) 275-0343 (facsimile)

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, via first class mail, postage prepaid, to:

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT 06880

Rayne M. Rasty, Esq.
Georgia-Pacific Corporation
133 Peachtree Street NE
P. O. Box 105605
Atlantic, GA  30348-5605

Robert L. Wyld, Esq.
Patrick J. Fahey, Esq.
Shipman & Goodwin
One American Row
Hartford, CT 06103

Joseph J. Costello, Esq.
Susan Hamilton, Esq.
Kay Kyungsun Yu, Esq
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

_____
Felix J. Springer