IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM E. CALLAHAN | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : NO. 3:01CV1205 (CFD) |
| | : |
| UNISOURCE WORLDWIDE, INC., et al. | : |
| | : |
| Defendants | : October 29, 2004 |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE IKON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This case arises out of Plaintiff William E. Callahan's claim that, notwithstanding the express terms of the 1991 Deferred Compensation Plan (the "Plan") permitting the Board of Directors of IKON Office Solutions, Inc. to terminate the Plan in its entirety under certain circumstances, the Plan could not be terminated as to him. In pursuing this action, Callahan attempts to recover benefits that are simply not available under the terms of the Plan. Callahan argues nonetheless that there exist violations of the Employee Retirement Income Security Act ("ERISA").[1] Callahan's arguments, however, ignore the plain language of the Plan. The Plan's Termination Provision gave the Board of Directors of IKON the discretion to determine whether the Plan would cause an adverse financial impact on IKON and to act to terminate the Plan under such circumstances. The Board made such a determination and took action to terminate the Plan. Thereafter, the benefits specified under the Termination Provision were paid to all Plan

---

[1]  Although Callahan includes allegations relating to the Age Discrimination in Employment Act ("ADEA") he has not asserted an ADEA claim against the IKON Defendants. See Amended Complaint, First Claim for Relief.

participants, including Callahan. The termination of the Plan and the subsequent payment of benefits in accordance with the Plan's Termination Provision were lawful under ERISA.

Pursuant to Fed. R. Civ. P. 56, Defendants Alco Standard Corporation ("Alco") and IKON Office Solutions, Inc. ("IKON") (collectively referred to as the "IKON Defendants") have filed their Motion for Summary Judgment requesting that the Court enter judgment in their favor as a matter of law.[2] There are no material issues of fact for the Court to resolve at trial.[3] In support of their motion for summary judgment, the IKON Defendants submit this Memorandum of Law and their Local Rule 56(a)(1) Statement with accompanying evidentiary materials.

## II. STATEMENT OF UNDISPUTED FACTS

The IKON Defendants' Statement of Undisputed Facts is set forth in their Local Rule 56(a)(1) Statement, which has been filed separately from this Memorandum of Law.

## III. ARGUMENT

### A. The Legal Standard Applicable To This Motion For Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[2] Defendants Unisource Worldwide, Inc. ("Unisource") and Georgia-Pacific Corporation ("Georgia-Pacific") are filing their motion for summary judgment separately.

[3] If the IKON Defendants' motion for summary judgment is denied, Callahan's ERISA claims should be determined by the Court as the factfinder at trial, not a jury. Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1258 (2d Cir. 1996) (holding that there is no right to a trial by jury in a suit brought to recover ERISA benefits).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. Id. at 325. Once the moving party makes this initial showing, the burden shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation" by the movant). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the nonmoving party is unable to establish the existence of an element essential to its case on which it bears the burden of proof at trial, a genuine issue of material fact cannot exist "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

Thus, summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000). IKON respectfully submits that there is no genuine issue of material fact in this case. Callahan was paid all of the benefits to which he was entitled under the terms of the Plan and in accordance with the Plan's Termination Provision. See Plan Section 19, (IKCP 43, Appendix to the IKON Defendants' Local Rule 56(a)(1) Statement ("App.") Ex. 3.) As the IKON Defendants did not violate ERISA, they are entitled to summary judgment as a matter of law in their favor and against Callahan.

B.  **Callahan's Claims Under ERISA Are Deficient And Must Be Dismissed As A Matter Of Law.**

In his Second Claim for Relief, Callahan seek to recover for alleged ERISA violations from the IKON Defendants, Unisource and Georgia-Pacific. Although he does not specify the provisions of ERISA pursuant to which he is attempting to assert his claims, Callahan describes his Second Claim for Relief as "Breach of Duty, fiduciary and non-fiduciary, Equitable Estoppel and Violation of ERISA." (Amended Complaint § V.)

At the outset, it is important to note that the United States District Court for the District of Vermont in Holcomb v. IKON Office Solutions, Inc., Civil Action No. 2:03-CV-106, a case involving the same Plan that is at issue here, rejected plaintiff Norman Holcomb's claim that the Plan was wrongfully terminated. See Holcomb Opinion and Order attached hereto as Exhibit A. The court specifically held that IKON's Board had the right to terminate the Plan because of the decline in interest rates and the concomitant adverse financial effect the Plan caused IKON. Accordingly, in the instant case, the payment of the Termination Benefit[4] to Callahan upon termination of the Plan was neither arbitrary nor capricious. To the extent that Callahan seeks to assert a breach of fiduciary duty claim, that claim fails because top hat plans are exempt from ERISA's fiduciary duty provisions. Callahan's breach of fiduciary duty claim also fails because the termination of a Plan is a settlor function, not a fiduciary function, in any event. To the extent that Callahan is asserting an equitable estoppel claim based on the federal common law developed under ERISA, that claim is deficient in that Callahan received all of the

---

[4]  Pursuant to Plan Section 19, upon the termination of the Plan, the benefit payable to a participant whose benefits had not yet commenced was "the value of the amount of the Participant's deferrals to the date of termination plus interest (compounded annually) at a rate of 6% per annum." (IKCP 43, App. Ex. 3.) The benefits payable under Section 19 of the Plan are referred to as the "Termination Benefit."

benefits to which he was entitled and there are no extraordinary circumstances that justify his estoppel claim.

### 1. Payment Of The Termination Benefit Was Neither Arbitrary Nor Capricious.

The Plan, since its inception,[5] has specifically reserved the right to the Board of Directors of IKON to terminate the Plan under certain circumstances. See Plan, Section 19 (IKCP 43, App. Ex. 3).

> Section 19, the Plan's termination provision, stated that:
>
> The Board of Directors of Alco shall have the right to terminate the Plan in its entirety and not in part at any time it determines that proposed or pending tax law changes or other events cause, or are likely in the future to cause, the Plan to have an adverse financial impact upon Alco. In such event, Alco shall have no liability or obligation under the Plan or the Participant's Participation Agreement (or any other document), provided that 1) Alco distributes, in lump sum, to any participant whose benefits have not commenced, the value of the amount of the Participant's deferrals to the date of termination plus interest (compounded annually) at a rate of 6% per annum; and 2) Alco distributes, in a lump sum, to any Participant whose benefit payments have commenced, all amounts thereafter due, in an amount as calculated in accordance with Paragraph [20], "Acceleration of Benefits." Such lump-sum distribution, at Alco's election, may be made in the form of cash, or life insurance, or both.

See Plan, Section 19 (IKCP 43, App. Ex. 3).

The Supreme Court has made clear that, under ERISA, employers are "generally free . . . for any reason at any time, to adopt, modify or terminate [their] plans." Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry., 520 U.S. 510, 515, (1997). See also Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to

---

[5] This termination provision existed as part of the Plan when Callahan was initially offered participation in the Plan and he executed his Participation Agreement on November 16, 1990. Moreover, Callahan's Participation Agreement expressly incorporated the terms of the Plan. (IKCP 2, App. Ex. 3.) Accordingly, Plaintiff made the determination to participate in the Plan having been fully apprised of the reservation of the right to terminate the Plan as set forth in Section 19. (Callahan Dep. 24:8-26:12, 31:7-8, and 104:20-24, App. Ex. 4.)

establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."). Consistent with this line of Supreme Court cases, the Second Circuit has enforced provisions in plan documents that reserve an employer's right to amend or terminate the plan. See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 491 (2d Cir. 1988) (modifications made to medical plans was permitted under employer's clear reservation of right to amend or terminate the plans at issue); Gallione v. Flaherty, 70 F.3d 724, 727-28 (2d Cir. 1995) (upholding the termination of a top hat plan). Plaintiff's bald assertion that IKON could not terminate the Plan as to him is contradicted by the plain language of the Plan. The Plan contains a clear reservation of the right to terminate the Plan, which is valid and enforceable under ERISA. See Plan, Section 19 (IKCP 43, App. Ex. 3).

Under Section 19, IKON's Board of Directors had the right to terminate the Plan when, in its discretion, it determined that events have caused, or are likely in the future to cause, the Plan to have an adverse financial impact on IKON. See Plan, Section 19 (IKCP 43, App. Ex. 3). On July 21, 2000, the IKON Board of Directors exercised this discretion and acted to terminate the Plan effective December 31, 2000. (Declaration of Walter J. Hope, Jr. ("Hope Decl.") ¶ 15, App. Ex. 1; see also Hope Dep. 68:5-16, App. Ex. 5.)

The Board determined that, as a result of the decline in interest rates, in 1999, IKON incurred an unexpected cash outlay of $2.4 million as opposed to the $1.5 million originally assumed, and a negative earnings impact of $1.3 million as compared to a positive impact of $1 million originally expected. (Hope Decl. ¶ 17, App. Ex. 1.) As for potential future impact, it was estimated that, for the period from 2000 through 2004, had the Plan not been terminated and assuming the Split Dollar Policies continued to achieve a 6% rate of return, IKON would have suffered a cash outlay of an additional $2.2 million per year as opposed to

$1.4 million per year as originally assumed, and a negative impact on earnings of $1 million per year as opposed to a positive $0.7 million per year as originally projected. (Hope Decl. ¶ 18, App. Ex. 1.) In addition, the diminishing number of participants contributing to the Plan that resulted from the divestitures of two subsidiaries and other employment terminations also contributed to the Plan having a negative impact on IKON. (Hope Decl. ¶ 19, App. Ex. 1.)

The Plan is explicit in its statement that, upon payment of the Termination Benefit after the Plan has been terminated, IKON shall have no other liability or obligation under the Plan. See Plan, Section 19 (IKCP 43, App. Ex. 3). On these facts, it is clear that Callahan received all benefits to which he was entitled under the terms of the Plan when he was paid the Termination Benefit. See Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 290 (2d Cir. 2000) ("Upon termination of the Plan, plaintiffs received repayment of the amount invested, plus interest at a compounded annual rate of 10%. The fact that the sums of money were lesser than anticipated, due to taxes or repayment of amounts borrowed, is of no moment. Plaintiffs obtained what they bargained for under the contract.").

In Holcomb, the plaintiff there argued that IKON "had no right to terminate the Plan under any provision of the Plan." Holcomb Opinion and Order at 14. The District of Vermont rejected Holcomb's argument and granted IKON's motion for summary judgment, explaining that:

> Under the plain terms of the Plan, however, the administrators were permitted to terminate the Plan in its entirety "at any time it determines that proposed or pending tax law changes or other events cause, or are likely in the future to cause, the Plan to have an adverse financial impact on [IKON]." The administrators determined that a combination of factors would "negatively affect the Company's ability to fund the 1991 plan" and decided to terminate it.

Holcomb Opinion and Order at 14 (citations omitted).

As the Vermont court noted earlier in its opinion, the decision of IKON's Board of Directors to terminate the Plan "was based on the lower than expected rate of growth of the cash value of the life insurance policies purchased under the Plan, as well as a decrease in the number of participants making deferrals, 'due to a number of divestitures and terminations of employees since 1990.'" Id. at 5 (citations omitted).  On this basis, the District of Vermont granted IKON's motion for summary judgment.

The Court here should also grant the IKON Defendants' motion for summary judgment on Callahan's ERISA claim on the basis that payment of the Termination Benefit to Callahan upon the Plan's termination was neither arbitrary nor capricious. [6]

### 2. Callahan Received Everything To Which He Was Entitled Under His Separation Agreement With Unisource.

Notwithstanding that the Plan was lawfully terminated in accordance with its terms, Callahan maintains that he felt that the termination of the Plan did not apply to him because of a separation agreement he entered into with Unisource in December 1998. (Deposition of William E. Callahan ("Callahan Dep."), 53:4-23, App. Ex. 4.)  Specifically, Callahan argues that, because he was granted vesting in the Plan as a result of his separation agreement, he was entitled to payment of the Pre-Termination Benefit (the benefit payable had the Plan not been terminated) regardless of the fact that the Plan was terminated.  (Callahan Dep., 68:2-13, App. Ex. 4.)  Callahan again ignores the express terms of the Plan, as they have existed since the time he elected to participate in the Plan.  Under the Plan's very specific definition of the term "vest" set forth in Section 5, whether a participant is vested determines

---

[6]    The court in Holcomb granted summary judgment without addressing the specific question of whether the arbitrary and capricious standard of review applied on the basis that, "even under the more stringent, de novo standard of review, the decision to terminate was permitted under the plain language of the Plan." Holcomb Opinion and Order at 14.

only whether that participant will be eligible to continue to participate in the Plan upon his termination of employment. (IKCP 39-40, App. Ex. 3.) To be "vested" in the 1991 Plan does not mean that the participant is eligible to commence benefits as defined by Section 6. (IKCP 40, App. Ex. 3.)

> As the court in Holcomb explained,
>
> whether Holcomb was vested or not is not the issue. Vesting would have determined what benefits Holcomb would have received upon retirement or age 65, even if he left the company, if the Plan had continued. The termination clause in the Plan governed the benefits he would receive in the event that the Plan was terminated, even if he had been fully vested at the time of termination.

Holcomb Opinion and Order at 4 n. 1 (citations omitted).

The same is true for Callahan. That he was given accelerated vesting determines the benefit, if any, he would have received upon attaining age 65 only if the Plan had continued to exist. After IKON's Board of Directors determined that continuing the Plan would cause an adverse financial impact on IKON and invoked the Plan's Termination Provision, however, the benefit paid to Callahan was correctly determined based upon the terms of the Termination Provision. Callahan was, thus, properly paid the Termination Benefit.

### 3. Callahan Cannot State A Breach Of Fiduciary Duty Claim Against the IKON Defendants.

#### a. Top Hat Plans Are Exempt From ERISA's Fiduciary Duty Provisions.

An employee benefit plan that is unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees is commonly referred to as a "top hat plan." Demery, 216 F.3d at 286-87. Top hat plans are expressly exempted from most of ERISA's substantive requirements. See ERISA Section 201(2), 29 U.S.C. § 1051(2) (exempting such plans from ERISA's participation and vesting and requirements); ERISA Section 301(a)(3), 29 U.S.C.

§ 1081(a)(3) (exempting such plans from ERISA's funding requirements); ERISA Section 401(1), 29 U.S.C. § 1101(a)(1) (exempting such plans from ERISA's fiduciary responsibility requirements); 19 C.F.R. § 2520.104-23 (exempting such plans from most of ERISA's reporting requirements).

Congress exempted top hat plans from these substantive requirements, including ERISA's fiduciary duty provisions, because it determined that an employer's higher level employees "have sufficient influence within the institution to negotiate arrangements that protect against the diminution of their expected pensions." Gallione v. Flaherty, 70 F.3d 724, 728 (2d Cir. 1995) (citing DOL Office of Pension & Welfare Benefit Programs Opinion 90-14A, 1990 WL 123933, at *1 (May 8, 1990) (stating that "in providing relief for top hat plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals by virtue of their position or compensation level, have the ability to affect or substantially influence . . . the design and operation of their deferred compensation plan. . . .")).

Because top hat plans are not subject to ERISA's fiduciary duty provisions, courts have determined that "there is no cause of action for breach of fiduciary duty involving a top hat plan." Goldstein v. Johnson & Johnson, 251 F.3d 433, 443 (3d Cir. 2001) (citation omitted). See also Demery, 216 F.3d at 290 (because top hat plans are not subject to ERISA's fiduciary duty provisions, the lower court properly dismissed the plaintiffs' breach of fiduciary duty claim); Campbell v. Computer Task Group, Inc., No. 00 Civ. 9543, 2001 WL 815575 at *3 (S.D.N.Y. July 19, 2001) (dismissing a breach of fiduciary duty claim related to a top hat plan because "the exemption of 'top hat' plans from the fiduciary obligations of ERISA . . . leads to the conclusion that no [fiduciary] obligations exists in this case.").

The Plan was a top hat plan in that it was "intended to constitute an unfunded deferred compensation arrangement for a select group of management or highly compensated employees." See Plan, Section 1, p. 9 (IKCP 38, App. Ex. 3). Because there was no fiduciary relationship between Callahan and the IKON Defendants, Callahan cannot sustain a breach of fiduciary duty claim against them and judgment should in favor of the IKON Defendants on Callahan's breach of fiduciary duty claim.

### b. Termination Of A Plan Is A Settlor Function That Cannot Give Rise to a Claim for Breach of Fiduciary Duty.

Callahan cannot state a breach of fiduciary duty claim against the IKON Defendants in any event because termination of a plan is a settlor, not a fiduciary, function. Fiduciary duty rules apply only when a fiduciary engages in fiduciary functions. 29 U.S.C. § 1104(a); Flanigan v. General Electric Co., 242 F.3d 78, 87 (2d Cir. 2001).

The United States Supreme Court has held consistently that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [employee benefit] plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999) (internal quotations omitted). Because termination of a plan is not a fiduciary function, it does not implicate ERISA's fiduciary duty provisions. See also Tourangeau v. Uniroyal, Inc., 189 F.R.D. 42, 46 (D. Conn. 1999) ("It is well settled that an employer . . . does not act as a fiduciary when it amends, modifies, [or] terminates . . . [a] plan") (citing Lockheed Corp. v. Spink, 517 U.S. 882, 891 (1996)).

Callahan's breach of fiduciary duty claim is based upon the allegation that the IKON Defendants improperly terminated the Plan. (Amended Complaint, Second Claim for

-11-

Relief ¶ 12.) Because termination of a plan is a settlor function that does not implicate fiduciary duties, the Court should enter judgment in the IKON Defendants' favor on this basis as well.

### 4. Callahan Has Failed To State An Estoppel Claim Against The IKON Defendants.

To establish an equitable estoppel claim under the federal common law developed under ERISA, a plaintiff must allege in his complaint that (1) the defendant made a material representation; (2) he reasonably relied on that representation; and (3) he was injured because of his reliance on the representation. Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993); see also Bonovich v. Knights of Columbus, 146 F.3d 57, 62-63 (2d Cir. 1998) (affirming dismissal of estoppel claim because plaintiff failed to establish all of the required elements) (citing Schonholz v. Long Island Jewish Medical Ctr., 87 F.3d 72, 78-79 (2d Cir. 1996)). To prevail on an equitable estoppel theory under Second Circuit law, a plaintiff must also prove the existence of extraordinary circumstances. Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir. 1999) (holding that an ERISA plaintiff seeking to establish an estoppel claim must, in addition to proving the basic estoppel elements, prove the existence of "extraordinary circumstances").

Callahan claims that his separation agreement with Unisource provides the basis for his assertion that the termination of the Plan did not apply to him. (Callahan Dep., 68:2-13, App. Ex. 4.) There is simply nothing in this document, however, that can be construed as making such a representation.

As discussed above, before he elected to participate in the Plan, Callahan was apprised of the fact that the Board of Directors of IKON could terminate the Plan under certain circumstances. (Callahan Dep., 104:20-24, App. Ex. 4.) Callahan admitted that he received a copy of the Plan when he was initially offered the opportunity to participate and that he carefully

read and understood the terms of the Plan before electing to participate. (Callahan Dep., 24:8-26:12, 31:7-8, App. Ex. 4.) Thereafter, the separation agreement did nothing more with respect to the 1991 Plan than offer Callahan accelerated vesting, as the term "vest" is defined by the Plan. (IKCP 39-40, App. Ex. 3.) Callahan was then treated as vested, in that he was permitted to continue to participate in the Plan even after his termination of employment. (Callahan Dep., 107:20-108:3, App. Ex. 4.) If he had not been treated as vested, his participation in the Plan would have ceased and he would have been paid the amount of his deferrals, without interest, at the time he retired. See Plan's Vesting Provision, Section 5 (IKCP 39-40, App. Ex. 3; see also Hope Dep. 75:3-17, App. Ex. 5). Nothing in the separation agreement, however, abrogated the right of IKON's Board to invoke the Termination Provision. Callahan, in fact, has admitted that his separation agreement with Unisource does not state that the Plan's Termination Provision was altered. (Callahan Dep., 109:4-6, App. Ex. 4.) The Board acted properly within its discretion to terminate the Plan effective December 31, 2000, and Callahan was correctly paid the Termination Benefit. See Holcomb Opinion and Order at 5 & 14.

Simply put, nothing in the Plan or Callahan's separation agreement contains any representation that the Plan could not be terminated as to Callahan. Consequently, he has failed to establish the first essential element of equitable estoppel. On these facts, Callahan cannot establish the second or third element of estoppel as he could not have reasonably relied, to his detriment, on a representation that was never made to him.

Finally, Callahan cannot make the required showing of "extraordinary circumstances" necessary for his estoppel claim. Stovall v. First Unum Life Ins. Co., 20 Fed. Appx. 47, 2001 WL 1178601 (2d Cir. Oct. 3, 2001) (the concept of equitable estoppel goes beyond a showing of reasonable reliance); see also Berg v. Empire Blue Cross & Blue Shield,

105 F. Supp. 2d 121, 130 (E.D.N.Y. 2000) ("ambiguity in a plan document as to whether or not benefits vest, or a promise on behalf of the employer that the benefit is included, is insufficient alone, or when viewed conjunctively, to establish extraordinary circumstances."). One court, for example, has held that the doctrine of estoppel is not available in an ERISA case where plaintiffs are not eligible for benefits under the terms of plan because such plaintiffs could not demonstrate extraordinary circumstances. Edwards v. Akzo Nobel, Inc., 193 F. Supp. 2d 680 (W.D.N.Y. 2001).

> The court in Edwards explained that:
>
> plaintiffs' claims seek to obtain a level of benefits to which they are simply not entitled under the terms of the Plan. At the time at which they ceased to be employees of Akzo, plaintiffs had not met the Plan criteria for early retirement benefits, and nothing that happened afterwards altered that fact. Under the terms of the purchase agreement between Akzo and Cargill, plaintiffs' rights under the Plan froze at the time of the transfer of the Watkins Glen facility to Cargill, which assumed no liability under the Plan. Although plaintiffs may understandably feel aggrieved at having been terminated by Cargill a short time later, that does not mean that, for purposes of calculating their level of benefits, the terms of the Plan can be ignored or rewritten. The Plan administrator's determination that plaintiffs were deemed to have been terminated from Akzo's employ on April 25, 1997, the date upon which the Atkins Glen facility was transferred from Akzo to Cargill, cannot fairly be characterized as arbitrary or capricious, and defendants are therefore entitled to summary judgment.

Id.

Similarly, Callahan's attempt to create from whole cloth a promise that does not exist in his separation agreement with Unisource cannot change the fact that the IKON Defendants acted in accordance with the terms of the Plan and Callahan was paid all of the benefits to which he was entitled. Accordingly, the IKON Defendants are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the IKON Defendants respectfully request that their motion for summary judgment be granted and the Court order that judgment enter in their favor and against Plaintiff William E. Callahan.

Respectfully submitted,

_____
Kay Kyungsun Yu
Federal Bar No. ct13440
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4188 Telephone
(215) 689-4515 Facsimile

OF COUNSEL:

Joseph J. Costello
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5295

LOCAL COUNSEL:

Robert L. Wyld
Federal Bar No. ct04333
Patrick M. Fahey
Federal Bar No. ct13872
Shipman & Goodwin
One Constitution Plaza
Hartford, Connecticut 06103
(860) 251-5620/5824

## CERTIFICATE OF SERVICE

I, Kay Kyungsun Yu, hereby certify that on October 29, 2004, a true and correct copy of the foregoing Memorandum of Law in Support of the IKON Defendants' Motion for Summary Judgment was served via First-Class Mail upon the following:

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT 06880

Rayne Rasty, Esq.
Georgia-Pacific Corporation
133 Peachtree Street NE
Atlanta, GA 30303-1847

Felix J. Springer, Esq.
Jennifer L. Sachs, Esq.
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Kay Kyungsun Yu