Case 3:01-cv-01205-CFD   Document 83-3   Filed 11/03/2004   Page 1 of 5

Unisource Northeast
100 Helmsford Way
P.O. Box 740
Windsor, CT 06095

Tel 860.298.3200
Fax 860.298.3123

:ource

December 23, 1998

**_PERSONAL & CONFIDENTIAL_**



Mr. William E. Callahan
234 East Opal Drive
Glastonbury, CT   06033

Dear Bill:

As you know, Unisource Worldwide, Inc. ("Company") is undergoing a reorganization of its business that requires certain difficult business decisions. As a result, many positions have been combined or eliminated, and your position has been adversely affected. This letter outlines and confirms our agreement of the terms and conditions that will apply relative to the separation of your relationship with the Company.

1.  _Separation Date_. You acknowledge that your employment with the Company will cease as of December 31, 1998 ("Separation Date").

2.  _Salary Continuation_. In consideration of your execution of this agreement the Company shall continue payments to you at the semi-monthly rate of $5,188.28 in accordance with the Company's normal payroll procedures through July 31, 1999 ("Final Payroll Severance Date").

3.  _Earned Vacation_. Earned vacation which has not yet been taken will be paid in addition to the severance payments, or as prescribed by state law.

4.  _Health Insurance_. If you are currently covered by the Company's medical and dental insurance as well as the Company's Employee Assistance Program (EAP), you will continue to be covered through July 31, 1999, provided that you do not receive medical coverage from another employer and provided that any co-payment obligations are maintained. This continuation period will run concurrently with the COBRA extension periods.

5.  _Other Insurance_. All insurances, other than medical and dental, will cease to be effective on December 31, 1998, if you are currently covered by these programs. You have the right to convert your life insurance to an individual policy and should contact your local human resources professional, if interested.

6. *COBRA*. Conversion opportunities which exist under the Company's insurance policy and those that are guaranteed you by the COBRA law may be exercised as indicated in the plan document and the COBRA notices which will be sent to you within fourteen (14) days after your Separation Date or within fourteen (14) days after you sign and return this letter, whichever is later.

7. *Retirement Savings/Pension Plan*. Contributions under the Unisource Worldwide, Inc. Retirement Savings Plan ("RSP") may continue and benefit accrual under the Unisource Participating Companies Pension Plan ("Pension Plan") will continue throughout the period of salary continuation. If you are not already fully vested in your account under the RSP and your accrued benefit under the Pension Plan, you will become fully vested in both plans as of your "Final Payroll Severance Date." At the end of the salary continuation period you will be entitled to all normal choices outlined in the plan documents in regard to your account under the RSP, if any. Any contributions you may have previously authorized under the RSP will cease effective with your final paycheck as provided in paragraph 2. When eligible to do so, you may request distribution of your account under the RSP by contacting Benefits Express at 1-888-953-8647.

8. *Deferred Compensation.* - Benefits under the 1991 IKON Office Solutions, Inc. (formerly Alco Standard Corporation) Deferred Compensation Plan will vest 100% and be distributed to you in the future, in accordance with the provisions of the Plan. You must continue to make the annual premium payments under the 1991 IKON Office Solutions, Inc. Deferred Compensation Plan to your age 65 to perpetuate the lump sum death benefit and age 65 policy transfer thereunder. These will be invoiced to you annually by IKON Office Solutions, Inc.

9. *Other Fringe Benefits.* - You will receive accelerated vesting under the following programs: Unisource Partners' Stock Purchase Plan and Unisource Stock Option Plan.

10. *Leased Vehicle.* - You will be provided the opportunity to purchase the company-leased vehicle you currently have the use of for the sum of $5,000. If you desire to do so, please confirm it with me.

11. *Company Property*. If you have not already done so, please return any remaining keys, credit cards, and any other property of the Company which have been issued to you prior to this time.

12. *Outplacement.* Professional outplacement counseling will be provided to you up to an amount determined by the Company, provided that you do not have any other employment commitments. You must advise us within thirty (30) days of your notification of termination if you want to utilize this service.

13. *Employment Letter*. The Company's Human Resources department will provide a letter describing your employment history and responsibilities at the Company, if requested.

14. *Unemployment Compensation*. The Company will support your application for unemployment compensation should you apply, verifying the reason for your displacement as a reduction in workforce.

15. *Employee Assistance*. EAP programs, as referenced in paragraph 4, will be provided in conjunction with local unemployment office assistance with resume preparation and other available job search assistance.

16. *Cooperation*. It may be necessary from time to time during your salary continuation period and thereafter to call upon you for assistance in connection with your prior responsibilities. We expect that you will be willing to do so provided, of course, that the same does not unreasonably interfere with your other employment obligations.

17. *Confidentiality*. You agree that you will keep the terms, amount, and fact of this Agreement strictly and completely confidential, and that you will not communicate or otherwise disclose to any employee of the Company (past, present, or future) or to any member of the general public (other than your attorney), the terms, amount, or fact of this agreement, except as may be required by law or compulsory process.

You understand and acknowledge that the benefits contained in this letter exceed the benefits to which you would otherwise be entitled upon termination of your employment. In consideration for the additional benefits extended to you in this letter, and intending to be legally bound hereby:

1) you agree to release and hold harmless forever, the Company, its direct and indirect subsidiaries and affiliates, directors, officers and employees from any and all causes of action, known or unknown, arising out of or relating to your association and/or employment with or termination from the Company, which may have existed prior to or contemporaneously with the execution of this agreement, including but not limited to breach of contract, implied or otherwise, impairment of economic opportunity, breach of the covenant of good faith and fair dealing, intentional or negligent infliction of emotional distress, or other contract or tort claims, the Age Discrimination in Employment Act of 1967 as amended, and the Older Workers Benefit Protection Act of 1990, the Fair Labor Standards Act, the Civil Rights Act of 1964 and amendments thereto, the Civil Rights Act of 1991, the Americans with Disabilities Act, Executive Order 11246, the Rehabilitation Act of 1973, and the Vietnam Veterans' Readjustment Assistance Act or any other federal, state, or local law (statutory or common) relating to discrimination in employment;

The Company reciprocally agrees to release and hold you harmless from any and all causes of action, known or unknown, arising out of or relating to your employment with the Company, and shall indemnify you against any expenses, judgments, penalties, fines and amounts paid in settlement in connection with any third party claims arising out of your employment with the Company to the extent that you acted as an authorized representative of the Company in good faith and in the best interests of the Company.

2) you agree you will not disparage in any way the Company or any of its employees to any person, either orally or in writing;

3) you hereby waive any right or claim you may have to employment, re-employment, or reinstatement with Company; and

4) you agree you will not induce or encourage any employee of the Company to leave the employment of the Company for a period beginning from the date hereof and continuing through your Final Payroll Severance Date; and

5) you agree you will not, directly or indirectly, for yourself or on behalf of any other person, use or disclose any Confidential Information belonging to the Company. Confidential Information includes, but is not limited to, memoranda, documents or records marked confidential or otherwise considered by the Company to be of a proprietary nature; names, addresses and buying practices of customers; customer service requirements, management practices; selling processes; pricing policies and lists, sources of supply; electronic information formats; business plans; financial policies and non-public financial information.

By signing this agreement, you acknowledge that

(1) you have had at least 45 days to consider the terms of this agreement and whether or not you should sign it;

(2) the Company has advised you that you should consult with an attorney of your own choosing prior to signing this agreement;

(3) you have consulted with, or have had sufficient opportunity to consult with, an attorney of your own choosing regarding the terms of this agreement;

(4) you are waiving valuable legal rights and releasing the Company of all claims which may have existed prior to or contemporaneously with the execution of this agreement, except for those obligations expressly stated in this agreement;

(5) you have not relied upon any representation or statement made by the Company or any employee or other person on behalf of the Company with regard to the subject matter, meaning, or effect of this agreement;

(6) you have read this agreement and fully understand its terms; and

(7) except as provided in this agreement, you have no right or claim, contractual or otherwise, to any or all of the benefits described in paragraphs 2, 3, 4, 5 and 7 of this letter; and

(8) this agreement does not reflect any admission by the Company of any liability or wrongdoing.

[Streamlining/Cat4/O40]

You further understand and agree that even if you do sign this agreement, you have the right to revoke it by delivering a notice of revocation in writing to me by mail, personal delivery, or facsimile (860-298-3275) within seven (7) calendar days of your signing the agreement.  Because you have this right, this agreement will not become effective or enforceable until seven (7) calendar days after it is signed by you.

If the above is consistent with your understanding, and if you are in agreement with all of its terms, please sign this letter and return it to me.  A fully-executed copy will be returned to you for your files.

Sincerely,

Gary J. Setta
Regional Vice President
Human Resources

/kmb

Agreed to and accepted by the undersigned the 24th day of December, 1998.

William E. Callahan
Employee Signature

Kristina M. Beakey
Witness

Gary J. Setta
Regional Vice President

12/24/98
Date