UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM E. CALLAHAN, | : |
| Plaintiff, | : |
| VS. | : DOCKET NO: 3:01CV1205(CFD) |
| UNISOURCE WORLDWIDE, INC., GEORGIA-PACIFIC CORPORATION, ALCO STANDARD CORPORATION AND IKON OFFICE SOLUTIONS, INC., ET AL | : : |
| Defendants | : DECEMBER 27, 2004 |

**PLAINTIFF CALLAHAN'S LOCAL RULE 56(a) 2
STATEMENT IN RESPONSE TO THE
IKON DEFENDANTS' RULE 56(a) 1
<u>STATEMENT</u>**

Pursuant to Local Rule 56(a) 2 plaintiff Callahan submits the following Rule 56(a) 2 Statement in response to IKON defendants' Local Rule 56(a)1 Statement:

1. Admit that the ALCO Standard Corporation 1991 Deferred Compensation Plan established on or about September 12, 1990 changed its name to the IKON Office Solutions 1991 Deferred Compensation Plan effective November 6, 1997. Prior

to January 1, 1997 ALCO Standard Corporation owned two predominant subsidiaries Unisource Worldwide Inc. and ALCO Office Products, Inc. (*Ex. 2, Hope. dep. pg. 12-13).* Rourke-Eno was part of Unisource (*Ex. 2, Hope dep. pg. 12-13).* On January 1, 1997 ALCO Standard Corporation split off from itself and Unisource Worldwide Wide, Inc. in a tax free distribution to shareholders (*Ex. 2, Hope dep. pg. 13-14).* Unisource was spun off and ALCO Office Products, Inc. remained with ALCO Standard Corporation for several months and since there was only one operating corporation, ALCO Standard Corporation and ALCO Office Products, Inc. became one corporation known as IKON Office Solutions, Inc. (*Ex. 2, Hope dep. pg. 14-17).*

    2. Admitted to the extent set forth in the response to paragraph 1 above.

    3. Admitted.

    4. Admit that the Plan is a top hat plan, see <u>Gallione vs. Flaherty</u>, 70 F.3rd 724 (2nd Cir. 1995); <u>Carr vs. First Nationwide Bank</u>, 816 F.Supp.1476, 1492 (ND Cal. 1993).

    5. Admitted.

    6. Admitted that this is language contained in the Plan.

    7. Admitted that this is language contained in the Plan.

    8. Admitted that this is language contained in the Plan.

9. Admitted that this is language contained in the Plan. Deny that this pertains to Callahan.

10. Admitted generally but not specifically with respect to plaintiff.

11. Admitted as to language only.

12. Admitted.

13. Admitted.

14. Admitted as to language.

15. Admitted as to language.

16. Admitted.

17. Admitted.

18. Admitted as to language.

19. Admitted as to language only.

20. Admitted.

21. Denied. It was precisely because Callahan understood that the IKON Board of Directors might terminate the Plan in the future that he and his lawyer, attorney Mac McGrail demanded an express representation and guarantee that at age 65 Callahan would actually receive $15,000 per year for 10 years and the $95,000 cash value and paid up death benefit of $375,000 (*Pltf's dep. pg. 104; Ex. 3, 4, 5, 6 and Pltf's Aff. par.*

*5-24)*. After Callahan's execution of the December 23, 1998 Separation Agreement, his understanding was that his benefits under the Plan were guaranteed and could not be taken away by the action of either Unisource or the Board of Directors of IKON (*Pltf's Aff. par. 1, 5-22)*.

22. Admit that Callahan received a copy of the 1991 Plan but had no attorney to explain the provisions that showed he understood it. (*Ex. 7, Pltf's dep. pg. 24-31)*.

23. Admitted as to language.

24. Admitted.

25. Admit that Callahan's initial understanding was that ALCO would be the sole owner of the Universal Life Insurance Policy, however, the Separation Agreement (*Ex. 3, par. 8)* provides that at age 65 the policy would be transferred to Callahan (*Ex. 3, 12/23/98 Separation Agreement)*.

26. Admitted that Unisource was a subsidiary of ALCO Standard Corporation until December 31, 1996.

27. Admitted that effective January 1, 1997 ALCO Standard Corporation spun off Unisource, and it became a separate corporation. Deny that it was unrelated to ALCO. For example, Georgia Pacific through Mary Hodgins, an attorney for Georgia Pacific, expressed Georgia Pacific's consent to the provisions related to Plan

4

Termination with respect to the 1991 Deferred Compensation Plan on or about March 13, 2000 and declared Georgia Pacific to be successor in interest to Unisource Worldwide (*Ex. 2, Hope dep. pg. 103-104, Ex. 10)*.  Unisource and Georgia Pacific then agreed to conceal from Plan participants IKON's intention in 2000 to terminate the Plan (*Ex. 13)*.

28.  Admitted.

29.  Deny that IKON, Unisource and Georgia Pacific did not act in a joint and concerted effort to facilitate the termination of the IKON Plan and to conceal IKON's intentions to Plan participants.  (*Ex. 10-13)*.

30.  See the response to 27 above.  Georgia Pacific, as Unisource's successor in interest, consented to the Plan termination and agreed to conceal IKON's intentions to terminate the 1991 Plan participants (*Ex. 10-13)*. Deny the remaining allegations.

31.  Admitted as to language only.

32.  Deny that IKON's agreement to honor Unisource's commitment to provide Callahan with the monthly payment benefit and split dollar insurance policy benefits at age 65 occurred in 2000 or 2001.  IKON's commitment as represented by Gary Setta occurred in December 1998 verbally in conversations between and among Setta, attorney McGrail and Callahan and in the Separation Agreement, par. 8, *Ex. 3; Ex. 7,*

*Pltf's Aff. par. 6-24.* It was represented to plaintiff that Setta and Unisource had the authority and the ability to make an unconditional representation that Callahan would be paid the deferred monthly benefit and the cash value, paid up death benefit and ownership of the split dollar life insurance policy in the December 23, 1998 Separation Agreement (*Ex. 8, December 15, 2000 letter from Callahan to Melampy, Pltf's Aff. par. 6-24).* Deny that IKON's agreement in 1998 as represented by Unisource in December 1998 was limited to "vesting".

33. Denied. The promise made to Callahan in *Ex. 3* on December 23, 1998 at par. 8 was an unconditional representation that, at age 65, Callahan would receive the benefits including his monthly payment of $15,000 for 10 years and the benefits of the split dollar insurance company. Admit that in the absence of this Separation Agreement, Callahan would have only received the repayment of his deferrals without interest and would further have lost all of his payments made on the split dollar life insurance policy which were nonrefundable under the Plan (*Pltf's Aff. par. 6-24*).

34. Admitted.

35. Admit that Callahan's 1998 Separation Agreement not only permitted Callahan to continue to participate in the 1991 Plan notwithstanding termination of his employment from Unisource but further guaranteed that, at age 65, he would actually

receive $15,000 per year for 10 years, a $95,000 cash value life insurance policy and a paid up death benefit of $375,000.  *(See, Option II, Pltf's Aff. par. 6-24)*

36. Admit that Callahan received $28,356.91 but deny the remaining allegations (*See responses to paragraphs 26-35 above*).

37.  Admit that on July 21, 2000 IKON's Board of Directors secretly took action to terminate the Plan effective December 31, 2000 *(Ex. 10-13)*.  Deny that their termination was permissible, because it was based on and resulted from IKON's own fraudulent and misleading conduct in violation of securities laws that caused IKON to pay $121 million dollars in settlement of a class action which is not an "event" that can permit or justify termination of the Plan with the resulting hardship to participants including the plaintiff. *(Ex. 14).*  The Plan was terminated because of IKON's own misconduct *(Ex. 14).*

38.   Denied.   While these were the justifications stated by Mr. Hope in explaining the rationale for termination of the Plan, we deny that Hope's explanation was either the actual or justifiable "event" that could be used as the true basis for Plan termination.  Rather, the termination decision was the result of IKON's own misconduct

which can never constitute a justifiable "event". *(Ex. 14 and Response to 37 above)*. There were not even any tax changes that could justify the termination of the Plan.

39. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 37 and 38 above*).

40. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 37-39 above*).

41. Deny that Hope's declaration was either a justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (*see, Ex. 14 and Responses to 37- 40 above*).

42. Deny that this is a valid reason or event justifying termination, and plaintiff further states that ALCO Standard Corporation was keenly aware when it spun off Unisource in January 1997 and then absorbed ALCO Office Products and changed its name to IKON later in January 1997 that the number of participants would be diminished. Therefore ALCO-IKON caused the very problem which it now seeks to

use as justification for terminating the Plan.  (*See also Ex. 14 and Responses to 37-41 above).*

43. Denied.  (See the Responses to 37-42 above).

44. Admit that Callahan had not yet reached the age of 65 on December 31, 2000.  Admit that benefits had not yet commenced, but deny that the Plan termination divested Callahan of the ability to receive Plan benefits when he turned 65 and deny that the Plan termination permitted ALCO, IKON, Unisource or Georgia Pacific to escape the responsibility of paying plaintiff Callahan at age 65 $15,000 a year for 10 years, $95,000 cash value life insurance policy and a paid up death benefit of $375,000.  (*See responses to 1-43 above; Pltf's Memorandum in Opposition; Ex. 3 – 14, Pltf's Aff. par. 1-24).*

45. Admit that Callahan was no longer employed as of December 24, 1998 (*Ex. 3).*  Deny the remaining allegations.

46. Deny that IKON, Unisource and Georgia Pacific could discharge their respective obligations to Callahan by merely paying the Termination Benefit.

47. Admit the wording of the Hope letter and enclosure but deny its lawfulness, propriety and validity.

48. See response to 47 above.

49. See response to 47 above.

50. Admit (*Ex. 8*).

51. Admit the language of the November 30, 2000 letter but deny its validity.

52. Admit the letter was sent but deny its validity.

53. Admit the language of the letter only.

54. Admit the language of the language of the letter but deny its validity.

55. Admit that Callahan testified he felt the termination of the Plan did not apply to him because of his Separation Agreement he entered into with Unisource in December 1998 (*Ex. 7, Pltf's dep. pg. 53*).

56. Admit that Callahan testified that his Severance Agreement made a commitment with regard to the 1991 Plan, that he would at age 65 receive a yearly

benefit of $15,000 for 10 years and the benefits of a life insurance policy with a cash value of $95,000 and a paid up death benefit of $375,000 at age 65 (*Pltf's Aff. par.  *). Deny remaining allegations.

57. Denied.  Par. 8 of the Separation Agreement (*Ex. 3)* does not refer in any way to the Plan's possible termination provision (*Ex. 3)*.  William Bauer, Director of Risk Management at Unisource during the period September through December 1998 and formerly the Administrator of the 1991 IKON-ALCO Plan testified that he did not recall ever discussing Callahan's severance during the fall of 1998 with Gary Setta (*Ex. 1, Bauer dep. pg. 49)*.  Bauer further testified that he could recall no conversation with Setta as to whether to include a reference to the 1991 Plan in Callahan's Severance Agreement (*Ex. 1, Bauer pg. 56)*.  Upon review of par. 8 of *Ex. 3*, the Callahan Separation Agreement of December 23, 1998, Walter Hope, the Administrator of the 1991 Plan testified that the language "is not language that I recommend or will recommend. It's neither." "To the best of my recollection, I have not seen this letter, therefore, this particular language…in other words, I didn't write it, I can't tell you about it, but it says what it says".  (*Ex. 2, Hope dep. pg. 83-84)*.

58. Denied, see the response to paragraphs 1- 57 above.

**Disputed Issues of Material Fact**

1. Whether Unisource, Georgia Pacific and IKON were guilty of age discrimination against William Callahan.

2. Whether Unisource, Georgia Pacific and IKON were employers.

3. Whether Georgia Pacific as successor in interest to Unisouce is an employer.

4. Whether Unisource, Georgia Pacific and IKON jointly acted and aided and abetted each other in depriving Callahan of the benefits of his 1998 Separation Agreement and specifically paragraph 8 (*Ex. 3*) as well as the benefits of the 1991 Deferred Compensation Plan.

5. Whether Callahan was constructively discharged in September 1998 by Unisource when Keneally removed Callahan from his position as Vice President of Customer Service and offered him no viable alternative employment but rather isolated and humiliated him leaving Callahan with no choice but to sign the 1998 Separation Agreement in December 1998.

6. Whether Unisource made an unconditional promise to Callahan that at age 65 he would be paid an annual payment of $15,000 for a period of ten years, the cash value of a life insurance policy equal to $95,000 and a paid up death benefit at age 65 equal to $375,000.

7. Whether Unisource deceived and misled Callahan into believing that Unisource was making an unconditional promise that, at age 65, Callahan would receive the $15,000 annual payment for ten years and the cash value and paid up death benefit of the split dollar life insurance policy which is still in force.

8. Whether Unisource intended to induce reliance by Callahan.

9. Whether Unisource acted recklessly in making the unconditional promise of benefits to Callahan.

10. Whether IKON knew or should have known that Unisource was making the unconditional promise in the 1998 Separation Agreement that Callahan would, at age 65, <u>actually receive</u> the $15,000 annual payment for ten years, the cash value and the paid up death benefit regardless of whether IKON terminated the Plan in the future.

11. Whether IKON, Unisource and Georgia Pacific concealed from plaintiff their intention to terminate the 1991 Plan and to deny the benefits of the 1998 Separation Agreement and the 1991 Plan as a discriminatory act under the ADEA and ERISA for themselves and in an effort to aid and abet Unisource in its deception of Callahan.

12. Whether the deception and concealment engaged in by Unisource, IKON and Georgia-Pacific estopped them from escaping liability for the deception perpetrated upon William Callahan and the denial to him of the benefits promised in the 1998 Separation Agreement and the 1991 Plan.

13. Whether IKON's explanation of decrease in interest rates was a pretext and concealment of the true and actual reason for Plan termination and whether the true reason or "event" motivating IKON was the consequence of its own deceptive and misleading practices in violation of securities law which resulted in IKON having to pay $121.1 million dollars in settlement of a shareholders class action as set forth in its 1999 Annual Report (Ex. 14).

14. Whether Callahan's signature on the December 23, 1998 Separation Agreement, which contained a material, misleading and deceptive representation as to his entitlement to actually receive at age 65 the $15,000 annual payment for 10 years,

he cash value and the death benefit of the split dollar life insurance policy was a knowing and voluntary waiver of his right to file an age discrimination case with the CHRO, bring this lawsuit or claim a violation of his rights under ERISA.

        THE PLAINTIFF,
        WILLIAM E. CALLAHAN


BY_____
  ANDREW B. BOWMAN
  Federal Bar No: ct00122
  1804 Post Road East
  Westport, CT 06880
  (203) 259-0599
  (203) 255-2570 (Fax)

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this _____ day of December, 2004 to:

Felix J. Springer
Jennifer L. Sachs
Day, Berry & Howard
CityPlace 1
Hartford, CT 06103-3499

Kay Kyungsun Yu, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

_____
ANDREW B. BOWMAN