UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WILLIAM E. CALLAHAN,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | DOCKET NO. 3:01cv1205 (CFD) |
| v. | : | |
| | : | |
| **UNISOURCE WORLDWIDE, INC., et al.** | : | |
| | : | |
| Defendants. | : | FEBRUARY 18, 2005 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE IKON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

There is but one question for this Court to decide with respect to Plaintiff William E. Callahan's claims against Alco Standard Corporation and IKON Office Solutions, Inc. (the "IKON Defendants"). That is, whether Callahan was paid all of the benefits to which he was entitled under the IKON Office Solutions, Inc. 1991 Deferred Compensation Plan (the "Plan"), taking into consideration Callahan's separation agreement. As discussed in detail in the IKON Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (the "IKON Defendants' Memorandum"), IKON's Board of Directors acted in accordance with the terms of the Plan to terminate it when it determined that continuing the Plan would cause an adverse financial impact on IKON. In his Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment (the "Opposition"), Callahan presents a lengthy and self-serving recitation of facts that are wholly irrelevant to the dispositive question in regard to the IKON Defendants.

First, it is apparent from the face of Callahan's Complaint that he has not asserted any claim of age discrimination against the IKON Defendants. Thus, to the extent that Callahan seeks to assert such a claim of age discrimination against the IKON Defendants at this late stage of this litigation, he should be barred from doing so.

Second, Callahan has failed to put forward evidence that is admissible or relevant to dispute the fact that the Board of Directors of IKON properly exercised its discretion to terminate the Plan and pay Callahan and all other participants the Termination Benefits as set forth under the Plan's terms. Therefore, any and all claims asserted by Callahan under ERISA fail as a matter of law.

## II.  ARGUMENT

### A.  Callahan's Amended Complaint Contains No ADEA Claim Against the IKON Defendants.

Although it is not entirely clear from his Opposition, it appears as though Callahan may be attempting to argue that the IKON Defendants, in addition to Unisource and Georgia-Pacific, purportedly violated his rights under the Age Discrimination in Employment Act ("ADEA"). (Opposition at 24.) It is clear from his Complaint, however, that Callahan did not assert any age discrimination claim against the IKON Defendants and this claim is asserted only against Unisource and Georgia-Pacific.

Section IV of Callahan's Amended Complaint is entitled: "FIRST CLAIM FOR RELIEF (ADEA Violation against ([sic] Unisource and Georgia-Pacific)."[1] On the other hand, Section V of Callahan's Amended Complaint is entitled: "SECOND CLAIM FOR

---

[1]   Compare with Plaintiff Eugene Paneccasio's Complaint in which Section IV is entitled: "FIRST CLAIM FOR RELIEF (ADEA Violation against Unisource, Georgia-Pacific, ALCO Standard Corporation and IKON Office Solutions, Inc.)."

RELIEF (Breach of Duty, fiduciary and non-fiduciary, Equitable Estoppel and Violation of ERISA against ALCO STANDARD, IKON Office Solutions, Inc., Unisource and Georgia-Pacific)." Furthermore, Callahan reiterates in his Prayer for Relief that his ADEA claim is asserted against Unisource and Georgia-Pacific only.[2] Given the plain language of his Amended Complaint, Callahan is precluded from arguing that IKON and/or Alco is liable to him as a result of any alleged act of age discrimination.[3]

### B.     Callahan's ERISA Claims[4]

#### 1.     Callahan Has Failed To State An Estoppel Claim Against The IKON Defendants.

Callahan's argument that he has stated a viable claim for estoppel under ERISA is premised entirely upon an erroneous assertion of fact that completely mischaracterizes the provision in his separation agreement relating to the Plan. Callahan represents that the separation agreement "mak[es] an unconditional promise to pay Callahan at age 65 the benefits under the 1991 Plan." (Opposition at 26.) To the contrary, the relevant provision of Callahan's separation agreement provides:

> 8.     <u>Deferred Compensation</u>. – Benefits Under the 1991 IKON Office Solutions, Inc. (formerly ALCO Standard Corporation Deferred Compensation

---

[2]     Callahan includes the following prefaces in his Prayer for Relief: "As to the First Claim for Relief Against the Defendants Unisource Worldwide, Inc. and Georgia-Pacific Corporation for Violation of the ADEA:" and "As to the Second Claim for Relief Against All Defendants:" (Section VI of Amended Complaint.)

[3]     In the event that Callahan were to attempt to seek leave of Court to amend his Amended Complaint to assert an age claim against the IKON Defendants, the IKON Defendants reserve the right to oppose such a motion on the basis that any such amendment would be futile for the reasons set forth in the IKON Defendants' Motion for Summary Judgment with respect to Paneccasio's age claim.

[4]     Callahan did not respond to the IKON Defendants' arguments regarding his breach of fiduciary duty claims in his Opposition, thereby, conceding that judgment should enter in favor of the IKON Defendants on such claims.

> Plan) will vest 100% and be distributed to you in the future, **in accordance with the provisions of the Plan**. You must continue to make the annual premium payments under the 1991 IKON Office Solutions, Inc. Deferred Compensation Plan to your age 65 to perpetuate the lump sum death benefit and age 65 policy transfer thereunder. These will be invoiced to you annually by IKON Office Solutions, Inc.

(Exhibit 3 to Callahan's Opposition (emphasis in bold added).)

The separation agreement simply does not contain an unconditional promise to pay the benefits Callahan now seeks. Rather, the separation agreement states that the benefits under the Plan will be paid in the future in accordance with the Plan's provisions. This is exactly what happened. Exercising its discretion in accordance with the terms of the Plan, IKON's Board of Directors determined that, as a result of the decline in interest rates and the decrease in the number of participant making deferrals, the Plan would create an adverse financial impact on IKON. (Paragraphs 38-43 of the IKON Defendants' Local Rule 56(a)(1) Statement.) After the Plan was properly terminated, Callahan was appropriately paid the Termination Benefit in accordance with Section 19 of the Plan and consistent with the terms of the separation agreement. Because there was no unconditional promise made to Callahan, he cannot establish the second or third essential elements of estoppel; he could not have reasonably relied, to his detriment, on a representation that was never made to him.

In any event, Callahan concedes that representation upon which he bases his estoppel claim (paragraph 8 of his separation agreement) was made by Unisource, not by the IKON Defendants. (Opposition at 26.) Callahan, thus, raises no issue of fact that requires application of estoppel with regard to the IKON Defendants. See Stovall v. First UNUM Life Ins., Co., Civil Action No. 01-7174, 2001 WL 1178601 (2d Cir. Oct. 3, 2001) (upholding district court's order granting insurer-defendant summary judgment because plaintiff raised

absolutely no issue of fact that the insurer-defendant's conduct required application of estoppel where the representations or promises upon which plaintiff relied concerned plaintiff's employer, not the insurer-defendant) (citing American Fed'n of Grain Millers v. International Multifoods Corp., 116 F.3d 976, 984 (2d Cir. 1997)).

Finally, Callahan's inflammatory rhetoric regarding alleged "deception" by Defendants fails to establish extraordinary circumstances vis-à-vis the IKON Defendants and has no basis in fact. The Plan, since before its inception, contained a provision permitting the IKON Board of Directors to terminate the Plan under certain circumstances. Callahan read the Plan before electing to participate and understood that the Plan could be terminated. (Callahan Dep., 24:8-26:12, 31:7-8, App. Ex. 4.) Moreover, nothing in the separation agreement abrogated the right of IKON's Board of Directors to invoke the Termination Provision. Callahan has failed to establish the extraordinary circumstances necessary to his estoppel claim and the Court should enter judgment in favor of the IKON Defendants. See, e.g., Edwards v. Akzo Nobel, Inc., 193 F. Supp. 2d 680 (W.D.N.Y. 2001).

### 2.     The Plan Was Properly Terminated By The Board Of Directors.

In an attempt to rebut the factual basis provided by the IKON Defendants that substantiates the reasons underlying the Board of Directors' decision to terminate the Plan, Callahan makes improper reference to a settlement by IKON of a series of separate and unrelated matters. By referring to IKON's settlement of unrelated matters, Callahan seeks to introduce evidence barred by Rule 408 of the Federal Rules of Evidence. Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is

likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In applying Rule 408, the Second Circuit has explained the rationale for the rule as "encouraging settlement by protecting parties to a settlement from having their good-faith efforts to settle a dispute used against them in subsequent litigation." See American Society of Composers, Authors and Publishers v. Showtime/The Movie Channel, 912 F.2d 563, 580 (2d Cir. 1990). Under Rule 408, Callahan should be barred from using IKON's settlement of these unrelated matters as evidence in this case.

In addition, Callahan has failed to lay the proper foundation for establishing the relevance of the settlements. The IKON Defendants have provided evidence through deposition testimony and affidavits that the basis for the termination of the Plan was the Board of Directors' determination that the decline in interest rates and the decrease in participant deferrals would cause an adverse financial impact on IKON. (Paragraphs 38-43 of the IKON Defendants' Local Rule 56(a)(1) Statement.) Callahan baldly denies that the stated reasons were the "justifiable" or "true" reasons for the termination. The only substantiation Callahan provides on this point is to refer to inadmissible evidence of the existence of settlements IKON entered into in 1999 without giving a shred of evidence to connect the settlements to the Board's decision to terminate the Plan.[5]

---

[5] Beyond the fact that Callahan's assertions have no evidentiary basis, they defy common sense. The IKON Defendants have provided evidence, uncontroverted by Callahan, that the order of magnitude of the adverse financial impact that the Plan would have in the years 2000 through 2004 would be approximately $1 million per year. (Hope Decl. ¶18, App. Ex. 1.)

(continued...)

On the other hand, Callahan has failed to controvert the facts alleged by the IKON Defendants that there was a decline in interest rates and a decrease in the number of participants making deferrals that affected the financial impact the Plan would have on IKON. See Paragraphs 39-42 of the IKON Defendants' Local Rule 56(a)(1) Statement and Callahan's Local Rule 56(a)(2) Statement in Response thereto.[6] By failing to respond to the facts alleged in Paragraph 39-42, Callahan should be deemed to have admitted these facts as true. See D. Conn. L. R. 56(a)(1) ("[A]ll material facts set forth in [a Rule 56(a)(1) Statement] will be deemed admitted unless controverted . . . ."); Vines v. Callahan, 2005 WL 94531, at *5 n.1 (D. Conn. Jan. 13, 2005); see also Chance v. Cundy, No. Civ. A. 303CV40JCH, 2004 WL 2009282, at *3 (D. Conn. Sep. 7, 2004) ("Where a moving party fails to respond to facts asserted in support of summary judgment, the court may accept the movant's factual assertions as true.").

In light of Callahan's failure to controvert the decline in interest rates, the resulting increase in IKON's cash outlays with negative earnings impacts, and the decrease in participant deferrals, his attempt to introduce inadmissible evidence of unrelated settlements, without an

---

(continued...)
This is a drop in the bucket compared to the $121.1 million that Callahan asserts the unrelated settlements cost IKON. Even under Callahan's unsubstantiated theory, termination of the Plan would do little to recover the cost of settling the unrelated matters.

[6] For example, the IKON Defendants allege in Paragraph 39 that "In 1999, the Split Dollar Policies had a rate of return of approximately 6% per year, down from the 9% per year originally contemplated at the time the Plan was first established in 1991. (Hope Decl. ¶ 16, App. Ex. 1.)" Callahan responds by stating: "Deny that Hope's declaration was either justifiable or true reason for termination of the 1991 Plan by the IKON Board of Directors (see, Ex. 14 and Responses to 37 and 38 above)." Paragraph 39, however, contained only a statement relating to the fact that interest rates declined, and contained no allegation that this was the reason for the termination of the Plan.

iota of evidence linking the settlements to the decision to terminate the Plan, is woefully insufficient to raise a genuine issue of material fact. Thus, Callahan has failed to distinguish this case from Holcomb v. IKON Office Solutions, Inc., Civil Action No. 2:03-CV-106, where the District of Vermont determined that the Plan was properly terminated. See also Gallione v. Flaherty, 70 F.3d 724, 727-28 (2d Cir. 1995) (upholding the termination of a top hat plan).[7]

---

[7]   In a footnote, based upon the Second Circuit's dicta in Gallione, Callahan asks the Court to reconsider its prior decision to dismiss his state law claims as preempted by ERISA. Such a request for reconsideration is untimely under D. Conn. L. Civ. R. 7(c)(1). (Opposition at 30 n.3.) Nonetheless, the holding of Gallione, that top hat plans can be terminated, is applicable here. In Gallione, the plaintiff brought a claim for benefits under a terminated top hat plan, seeking payment of the pre-termination benefits that would have been available had the plant not been terminated. The Second Circuit upheld the district court's decision to grant the defendants' motion for summary judgment, holding that ERISA's vesting provisions did not apply to top hat plans and that nothing in the top hat plan at issue in that case created a contractual right to benefits thereunder. Id. at 727-29.

## III. CONCLUSION

For the foregoing reasons, the IKON Defendants respectfully request that their motion for summary judgment be granted and the Court order that judgment enter in their favor and against Plaintiff William E. Callahan.

Respectfully submitted,

*P M Fahey*
Kay Kyungsun Yu (ct13440)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981- 4188
(215) 689-4515 (facsimile)

Of Counsel:

Joseph J. Costello
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5295

Local Counsel:

Robert L. Wyld (ct04333)
Patrick M. Fahey (ct13862)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
(860) 251-5000

Attorneys for the IKON Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via First-Class, United States mail on this 18th day of February, 2005 on the following:

Andrew B. Bowman, Esq.
1804 Post Road East
Westport, CT 06880

Rayne Rasty, Esq.
Georgia-Pacific Corporation
133 Peachtree Street NE
Atlanta, GA 30303-1847

Felix J. Springer, Esq.
Jennifer L. Sachs, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT 06103-3499

*Patrick M. Fahey* (signature)
Patrick M. Fahey

395396 v.01